UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAN-AM FUEL DISTRIBUTION LLC,<br><br>Plaintiff,<br><br>v.<br><br>SINCLAIR OIL LLC et al.,<br><br>Defendants. | CASE NO. 3:24-cv-05743-DGE<br><br>ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS (DKT. NO. 54) |

Defendant Glovis America, Inc. ("Glovis") filed counterclaims and a third-party complaint against Can-Am Fuel Distribution LLC ("Can-Am"), Torcroft, LLC ("Torcroft") and Justin McCallum.  (*See* Dkt. No. 51.)

McCallum is the principal owner of Can-Am and Torcroft.  In 2019 Sinclair Oil, LLC ("Sinclair") authorized Torcroft to operate a Sinclair branded service fuel station in Vancouver, Washington.  As part of this transaction, Glovis agreed to supply fuel for the fuel station. Torcroft and McCallum executed a credit agreement and guaranty in which Torcroft and McCallum guaranteed payment for fuel Glovis supplied to the fuel station.  Eventually, however,

Can-Am came into existence and it, rather than Torcroft or McCallum, executed a sublicense agreement with Glovis whereby Can-Am would operate a Sinclair branded fuel station and would purchase fuel from Glovis. Glovis claims it supplied fuel to the fuel station pursuant to the credit agreement and guaranty and seeks to collect an alleged outstanding balance for fuel Glovis supplied.

Glovis asserts a breach of contract claim against Can-Am based on their sublicense agreement and breach of contract claims against Can-Am, Torcroft, and McCallum based on the credit agreement and guaranty Torcroft and McCallum signed. Glovis also asserts a claim for unjust enrichment against Can-Am, Torcroft, and McCallum for receiving fuel at the fuel station without payment.

Can-Am, Torcroft, and McCallum move to dismiss the breach of contract claims based on the credit agreement and guaranty Torcroft and McCallum signed and the unjust enrichment claims. For the reasons stated herein, the motion to dismiss (Dkt. No. 54) is GRANTED in part and DENIED in part.

## I   BACKGROUND

**A. Alleged Facts**

McCallum is the owner and principal of Can-Am and Torcroft. (Dkt. No. 51 at 20.) The principal place of business for both Can-Am and Torcroft is 16320 SE Cascade Park Drive, Vancouver, Washington. (*Id*.) Can-Am operated a service motor fuel station at this address (hereinafter, the fuel station is referred to as the "Licensed Location") pursuant to the Sinclair Trademark Sublicense Agreement ("STSA") dated November 22, 2019. (*Id*. at 21; Dkt. No. 1-1

at 2–13.) Glovis asserts that Torcroft was "Can-Am's affiliate and predecessor"[1] regarding the Licensed Location and any "relevant contracts entered into for the operation of the Licensed Location." (Dkt. No. 51 at 21.) In April 2019, Sinclair "authorized Torcroft to become a 'Sinclair dealer' and entered into an Agreement establishing the same." (Id.)[2]

On July 3, 2019, McCallum on behalf of Torcroft executed a Fuel Credit Application in which Torcroft agreed to pay Glovis for fuel delivered to the Licensed Location. (Dkt. No. 54 at 22.) Fuel payments were due "net (5) days from the date of delivery" and included interest at a rate of 18% per annum for all amounts not paid within the five days. (Id.) As part of the Fuel Credit Application, McCallum signed a personal guaranty for all amounts owed under the Fuel Credit Application. (Id. at 24.)

Glovis was authorized to "automatically debit from Torcroft's checking Account" payments owed under the Credit Application Agreement. (Dkt. No. 51 at 22.) Glovis had "automatic EFT privileges of Torcroft's bank account until some date before June 29, 2023." (Id.) Glovis supplied fuel on credit to the Licensed Location and there remains an outstanding balance of $1,194,162.50 under the Credit Application Agreement. (Id.)

Notwithstanding Torcroft's and McCallum's prior interactions with Sinclair and Glovis regarding the Licensed Location, only Can-Am executed the STSA with Glovis. (Dkt. No. 1-1 at 2–13.) The STSA identifies that Can-Am agreed to pay Glovis for motor fuel for the Licensed Location: "Provided [Can-Am] is in good credit standing with GLOVIS and maintains its credit

---

[1] "Affiliate and predecessor" is the same language Can-Am used to describe its relationship with Torcroft. (Dkt. No. 1 at 6.) Though in answer to Glovis's counterclaims, Can-Am "denies that it is an affiliate of or successor-in-interest to Torcroft." (Dkt. No. 53 at 20.)

[2] Glovis does not identify the "Agreement" authorizing Torcroft to become a Sinclair dealer. The Court, however, notes that Can-Am's complaint identifies a letter of intent dated April 26, 2019 executed between Torcroft and Sinclair. (Dkt. Nos. 1 at 6–7; 1-1 at 76.) Glovis acknowledges that the letter of intent is a document that speaks for itself. (Dkt. No. 51 at 4.)

worthiness with GLOVIS' periodic credit reviews. [Can-Am] shall, except as the parties may agree, pay GLOVIS under 'net 15 days' terms for motor fuels . . . which [Can-Am] may purchase." (Dkt. No. 1-1 at 3.) The STSA states the STSA "constitutes a merger of all proposals, negotiations and representations with reference to the subject matter and provisions hereof, and may be amended or modified only in a writing signed by [Can-Am] and authorized by an authorized officer of GLOVIS." (*Id*. at 12.)

### B. Motion to Dismiss

Can-Am, Torcroft and Glovis move to dismiss Glovis's breach of contract claims that are based on the Fuel Credit Application and to dismiss the claims for unjust enrichment. (Dkt. No. 54.) They assert the STSA superseded the terms of the Fuel Credit Application because the STSA is an integrated written contract. (*Id*. at 10–14.) They also assert the unjust enrichment claims are barred as a matter of law because Glovis asserts a breach of contract claim based on the Fuel Credit Application; in other words, that Glovis cannot assert an unjust enrichment claim where it asserts the existence of a contract. (*Id*. at 14–16.)

As a preliminary argument, Glovis asserts the motion to dismiss should be denied at this stage because there is a choice of law question as to whether California or Washington law applies to the integration argument, and additional discovery is necessary to determine the choice of law. (Dkt. No. 55 at 7–9.) Glovis also argues the breach of contract claims based on the Fuel Credit Application are factually plead and that the STSA's merger and integration clause does not impact the validity of the Fuel Credit Application. (*Id*. at 9–12.) Glovis also argues it has plead sufficient facts to establish unjust enrichment and that "the parties' agreements did not address or contemplate the independent purchase and profit of the motor fuel." (*Id*. at 13.)

## II   LEGAL STANDARD

On a motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded factual allegations and construe the allegations in favor of the non-moving party. *See Wood v. City of San Diego*, 678 F.3d 1075, 1080 (9th Cir. 2012). The Court need not, however, assume the truth of conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 27 (1957).

## III   DISCUSSION

### A. Can-Am: breach of contract claim based on Fuel Credit Application

#### 1. Choice of Law

The Parties dispute whether the STSA's integration clause prohibits Glovis from asserting a breach of contract claim against Can-Am that is premised on the Fuel Credit Application. Glovis asserts further discovery is needed to analyze this issue because a dispute exists as to whether Washington or California law applies to the issue of integration. Glovis claims a dispute exists because "Washington Courts will still apply the law of this state where

Washington has the most significant relationship to the events at issues." (Dkt. No. 55 at 7.)  To support this statement, Glovis cites *Barr v Interbay Citizens Bank of Tampa, Fla.*, 635 P.2d 441 (Wash. 1981) and *Rutter v. BX of Tri-Cities, Inc.*, 806 P.2d 1266, 1268 (Wash. Ct. App. 1991).

*Barr* involved tort claims where the issue was "whether the trial court was required to apply the law of Florida [or Washington] to plaintiff's claim for punitive damages."  635 P.2d at 443.  It is in this context that *Barr* stated that Washington has "rejected the lex loci delicti choice-of-law rule and has adopted the most significant relationship rule for contracts and tort choice-of-law problems."  *Id*.  *Barr* then went on to evaluate whether Florida or Washington law applied to the tort claims and the specific facts of that case.  *Id*. at 443–445.  Importantly, though, *Barr* did not involve a contract claim (oral or written) and certainly not a written contract containing an agreed choice of law provision.  *Barr* is inapposite as to whether the provisions of the STSA between Can-Am and Glovis is governed by Washington or California law.

Similarly, *Rutter* identified that "Washington courts will not give effect to an express choice of law clause if application of the law of the chosen state would be contrary to a fundamental policy of Washington and Washington has a materially greater interest in the determination of the particular issue."  806 P.2d at 1268.  *Rutter* involved the alleged wrongful termination of a franchise.  The court determined that Washington's Franchise Investment Protection Act ("FIPA") "reflect[ed] a fundamental policy" to protect Washingtonians "from oppressive practices historically associated with the sale of franchises" and that Washington had a materially greater interest in determining whether a franchise had been wrongfully terminated.  *Id*.  As a result, the court in *Rutter* disregarded the choice of law provision contained in the parties' contract.  *Id*.  Here, Can-Am's FIPA claim against Glovis has been dismissed.  (*See* Dkt. No. 48 at 22–23.)  FIPA is irrelevant to Can-Am's breach of contract claim against Glovis.

Moreover, Glovis does not claim application of the STSA's choice of law provision would be contrary to a Washington fundamental policy or that Washington has a materially greater interest in determining the impact of the STSA's integration clause on the breach of contract claim Glovis now asserts against Can-Am. *Rutter*, therefore, also is inapposite.

Glovis also asserts, "the Court has already reserved ruling on whether the choice of law provision found in paragraph 20 of the STSA applies, *pending additional discovery*." (Dkt. No. 55 at 7) (citing Dkt. No. 48 at 19 n.7.) But as Can-Am points out, the Court's observation about "whether the choice of law provision found in paragraph 20 of the STSA applies" pertained to Can-Am's breach of contract claim against Sinclair because the contours of their particular contractual relationship was unclear. Thus, "without complete discovery, the Court [was] unable to rule one way or the other which provisions of the STSA apply" to *Can-Am's and Sinclair's* contractual relationship. (Dkt. No. 49 at 19.) The Court did not previously offer any observation or ruling on the application of paragraph 20 of the STSA to Can-Am's contract claim against Glovis or vice versa.

Lastly, Glovis claims Can-Am should be judicially estopped from relying on the choice of law provision contained in the STSA because Can-Am previously asserted a FIPA claim. But again, that claim was dismissed at the pleading stage and the Court finds no inconsistency for Can-Am to now assert the STSA's choice of law provision is enforceable as to any breach of contract claim between Can-Am and Glovis.

"The courts will enforce an express choice of law clause in a contract as long as the application of the chosen law does not violate the forum state's fundamental public policy." *Truck Center Corp. v. General Motors Corp.*, 837 P.2d 631, 634 n.3 (Wash. Ct. App. 1992)). Accordingly, the Court will enforce the STSA's choice of law provision in analyzing whether the

STSA's integration clause bars Glovis's breach of contract claim against Can-Am based on the Fuel Credit Application and guaranty.

### 2. Analysis of integration clause is proper at this stage

Glovis argues that analysis of the STSA's integration clause is improper because the only issue in a Rule 12(b)(6) motion is whether sufficient factual matters have been plead; and because Can-Am "does not dispute the Credit and Personal Guaranty are valid agreements,", Glovis has sufficiently plead a breach of contract claim. (Dkt. No. 55 at 10.) But Can-Am asserts the Fuel Credit Agreement and the guaranty are not valid, enforceable agreements against Can-Am because the STSA superseded all other potential agreements not contained in the STSA. (Dkt. No. 54 at 11.) Even Glovis asserts the terms of the STSA are valid and enforceable, which would include the choice of law provision. (Dkt. No. 51 at 25) ("The rights and obligations created by the Sublicense Agreement, which is now expired, remain valid and enforceable."). If Can-Am is correct, the STSA's integration clause forecloses any claim against it based on the Fuel Credit Application, which would mean there are no facts to support Glovis's claim that Can-Am breached the terms of the Fuel Credit Agreement. Analysis of the STSA's integration clause is proper at this stage.

### 3. STSA's integration clause

California's parol evidence rule provides:

> When the parties to a written contract have agreed to it as an 'integration—a complete and final embodiment of the terms of an agreement—parol evidence cannot be used to add to or vary its terms. When only part of the agreement is integrated, the same rule applies to that part, but parol evidence may be used to prove elements of the agreement not reduced in writing.

*A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., Bumble Bee Seafoods Division*, 852 F.2d 493, 495 (9th Cir. 1988) (quoting *Masterson v. Sine*, 436 P.2d 561, 563 (Cal. 1968) (citations

omitted)). "The crucial issues in determining whether there has been an integration is whether the parties intended their writings to serve as the exclusive embodiment of their agreement." *Marini v. Jackson*, 183 Cal.App.3d 695, 228 Cal.Rptr. 518, 521 (1 Dist. 1986) (quoting *Salyer Grain & Milling Co. v. Henson,* 13 Cal.App.3d 493, 91 Cal.Rptr. 847 (5 Dist.1970)). Courts consider:

> the language and completeness of the written agreement and whether it contains an integration clause, the terms of the alleged [ ] agreement and whether they contradict those in the writing, whether the [ ] agreement might naturally be made as a separate agreement, and whether the jury might be misled by the introduction of the parol testimony. A court also considers the circumstances surrounding the transaction and its subject matter, nature and object.

*Marani,* 228 Cal.Rptr. at 522 (citations omitted).

Application of these factors to this matter raise a question of fact as to whether Can-Am and Glovis intended the STSA to serve as the exclusive embodiment of their agreement regarding the purchase and delivery of fuel to the Licensed Location.

The language and completeness of the STSA, although appearing complete, leaves open the possibility of other agreements regarding the purchase and delivery of motor fuel. It identifies Can-Am will pay Glovis for motor fuel based on Glovis's relationship with a particular distributor and that so long as Can-Am "is in good credit standing with GLOVIS," Can-Am "shall, *except as the parties may agree*, pay GLOVIS under the 'net 15 days' terms for motor fuels . . . [Can-Am] purchases." (Dkt. No. 1-1 at 3) (emphasis added). The "net 15 days" payment conflicts with the Fuel Credit Application's "net (5) days from the date of delivery" and the18% interest per annum for all amounts not paid within the five days—both of which Torcroft agreed to pay. (*See* Dkt. No. 54 at 22.) An agreement to pay for fuel delivery different than that which is identified in the STSA is contemplated by the plain language: "except as the parties may agree." And presenting the terms of the Credit Application to the trier of fact, if that is what

the parties ultimately agreed would govern terms of the fuel sale, would not be confusing misleading for the jury to consider.

Also, considering the circumstances surrounding the history of the parties as to the authorization and operation of the Licensed Location, there are real questions as to whether Can-Am and Glovis agreed that the terms of the Fuel Credit Application governed the sale of fuel between them. Glaring is the fact that Glovis remained authorized to "automatically debit from Torcroft's checking Account" payments owed under the Credit Application Agreement and that Glovis had "automatic EFT privileges of Torcroft's bank account until some date before June 29, 2023." (Dkt. No. 51 at 22.) Can-Am also admitted Torcroft is its "affiliate and predecessor" (Dkt. No. 1 at 6), thereby raising questions as to whether Can-Am and Torcroft acted as one and the same or whether Can-Am assumed Torcroft's obligations. There also is limited information at this stage as to how payments for fuel were made in practice, i.e., at "net 15 days" or "net (5) days."

Accordingly, Glovis has plead facts sufficient to plausibly conclude Can-Am and Glovis were operating under the terms of the Fuel Credit Application regarding the sale and delivery of fuel. Thus, Glovis's counterclaim sufficiently asserts a breach of contract claim. The motion to dismiss the breach of contract claim against Can-Am is DENIED.

### B. Torcroft and McCallum: breach of contract claim based on Fuel Credit Application and Guaranty

For the same reasons the breach of contract claim against Can-Am survives, so too do the breach of contract claims against Torcroft and McCallum survive. To reiterate, Glovis alleges it was being paid via Torcroft's bank account, which if accepted as true could support the conclusion that both Torcroft and McCallum continued to operate under the terms of the Fuel

Credit Application.  Accordingly, the motion to dismiss the breach of contract claims against Torcroft and McCallum are DENIED.

### C.  Can-Am, Torcroft, McCallum: Unjust Enrichment

The Parties agree that "a party to an express contract cannot bring an action on an implied contract relating to the same subject matter, in contravention of the express contract."  (Dkt. Nos. 55 at 13; 57 at 13) (both citing *MacDonald v. Hayner*, 715 P.2d 519 (Wash. Ct. App. 1986)).  Yet, Glovis asserts "this principle does not apply here because under any of the STSA, the Credit Agreement and/or the Personal Guaranty, the parties' agreements did not address or contemplate the independent purchase and profit of the motor fuel."  (Dkt. No. 55 at 13.)

Glovis's assertion conflicts with the allegations contained in it counterclaims and third-party complaint.  Each breach of contract claim based on the Fuel Credit Application and the guaranty against Can-Am, Torcroft, and McCallum seeks to recover $1,194,162.50 plus interest.  (*See* Dkt .No. 51 at 26–28.)  This dollar figure is alleged to represent the value of the credit extended under the Fuel Credit Application for fuel, and which McCallum personally guaranteed.  (*Id.*)  At the same time, the unjust enrichment claims seek to recover of $1,194,162.50 for "accepting and/or taking credit from Glovis for the purchase of fuel" (*id.*); the exact same figure for the credit Glovis extended.

In short, Glovis agrees that a claim for unjust enrichment is barred by an express contract that covers the same subject matter.  Because Glovis's unjust enrichment claim covers the same subject matter as its breach of contract claim, the motion to dismiss the unjust enrichment claims is GRANTED.

## IV    CONCLUSION

For the reasons stated herein, the motion to dismiss (Dkt. No. 54) is GRANTED in part and DENIED IN PART.  Glovis's breach of contract claims may proceed and its unjust enrichment claims are DISMISSED.

Dated this 28th day of August, 2025.

David G. Estudillo
United States District Judge